**HI-CO ENTERPRISES, INC. and James R. Jones, Plaintiffs,**

v.

**CONAGRA, INC. and ConAgra-Georgia, Inc., Defendants.**

Civ. A. No. 674-14.

United States District Court,
S. D. Georgia.

July 26, 1976.

Milton A. Carlton, J. Franklin Edenfield, Swainsboro, Ga. (Spivey, Carlton, Clark & Merrill, Swainsboro, Ga.), for defendants.

## ORDER

LAWRENCE, District Judge.

In 1971, Hi-Co Enterprises, Inc., with its place of business in Metter, Georgia, and James R. Jones, who resides in Reidsville, Georgia, borrowed money from ConAgra-Georgia, Inc. to purchase pullets for the production of commercial eggs. In connection with its loan, Hi-Co signed a "Security Agreement" which provided in paragraph 6 that:

> It is understood between the parties that Producer, in consideration of the extension of this financing assistance, will purchase all of its feed from ConAgra.

In connection with his loan, Mr. Jones signed a "Poultry Finance Agreement" which provided in paragraph 5 that:

> The financing assistance made available hereunder, other than for the purchase of chicks or pullets, will be expended for the purchase of feeds from [ConAgra]. Should producer cease using such assistance while the same is available under the provisions hereof by entering upon a feeding program for said baby chicks, pullets or hens, involving other than feeds of [ConAgra], then [ConAgra], at its option, may declare the entire amount owing hereunder immediately due and payable and be free of all further obligations under this Agreement.

However, unlike the "Security Agreement," the "Poultry Finance Agreement" expressly provided that six months after the hatch date of a flock, the producer was free to buy competitive feeds.

In 1974, Hi-Co filed a complaint in this Court against ConAgra-Georgia, Inc. and against its parent corporation, ConAgra, Inc., alleging that the defendants had violated the federal antitrust laws, particularly Section 1 of the Sherman Act, 15 U.S.C. § 1. Essentially, Hi-Co contends that the exten-

Jerre B. Swann, Atlanta, Ga. (Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga.), for plaintiffs.

sion of loans or credit to buy pullets on the condition that the pullets be fed ConAgra feed is an unlawful tying arrangement and that it was damaged by having to pay higher prices for ConAgra feed than the prices charged for comparable feeds by competitors.

Mr. Jones has joined as a plaintiff with Hi-Co and both Hi-Co and Jones seek to represent not only themselves, but all other commercial egg producers who borrowed money from either of the defendants to purchase pullets on the condition that the pullets be fed ConAgra feed. The defendants have objected to class certification and this Court must now rule on the question of whether or not a class action is proper under the factual circumstances of this case and in light of the applicable law. For the reasons stated hereinafter, the Court finds that this action does satisfy the requisites for class action treatment specified in Rules 23(a) and 23(b), Fed.R.Civ.P.

*Numerosity*

■ The first prerequisite for a class action is that there must be a class "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Defendants have asserted that the contracts executed by the various potential class members are not significantly similar to justify the inclusion of producers who signed different contracts in one class and further than Con-Agra, Inc. and ConAgra-Georgia, Inc. are separate corporations with the result that producers who signed agreements with one defendant should not be joined in a class with producers who signed agreements with the other defendant. The Court finds, however, that the agreements are sufficiently similar to justify the treatment of both in one class action[1] and that, based on the particular facts of this case, ConAgra and ConAgra-Georgia are sufficiently interrelated so as to be treated as a single entity.

■ Given these rulings, defendants have acknowledged that approximately 45 commercial egg producers located in the territory formerly serviced by the Southern Division of ConAgra[2] signed an agreement which contained a provision for the extension of credit or loans on condition that the signatory purchase ConAgra feed. Joinder of such a number of individuals, located in several States, would be impracticable, and the numerosity requirement of the Rule is satisfied. *See, e. g., Philadelphia Electric Co. v. Anaconda American Brass Co.,* 43 F.R.D. 452, 463 (E.D.Pa.1968) (class of 25 certified).

*Common Questions*

■ The second prerequisite for class action certification is that there must be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The Court finds that there are such common questions which predominate in this action, as discussed *infra* in connection with the further requirements of Fed.R.Civ.P. 23(b)(3).

*Typicality*

The third prerequisite is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The antitrust claims of an illegal conditioning of loans on the purchase of feed arise out of a practice evidenced by similar language in form agreements signed by each class member. Moreover, the named plaintiffs and the class members they seek to represent were all commercial egg producers who purchased the types of feeds offered by defendants in a five state area as suitable feeds for laying chickens. This case may thus be distinguished from *Plekowski v. Ralston Purina Co.,* 68 F.R.D. 443 (M.D.Ga. 1975), where the Court dealt with a com-

---

1. While there are variations in the wording of the "Security Agreement," as compared to the "Poultry Finance Agreement," such variations do not appear to be material in substance. *Cf. Aamco Automatic Transmissions, Inc. v. Tayloe,* 67 F.R.D. 440, 448–49 (E.D.Pa.1975).

2. The Southern Division encompassed the five state area of Alabama, Georgia, Mississippi, Florida and Tennessee and was the only division in which defendants entered into agreements with commercial egg producers of the type here under attack.

mercial egg producer who sought class certification on behalf of a nationwide class consisting of persons engaged in a wide range of businesses, who had purchased substantially different types of feeds from the defendant, under a multitude of arrangements of arguably different antitrust significance.

*Adequacy of Representation*

Rule 23(a)(4) establishes as the fourth prerequisite for class certification the requirement that representative parties must "fairly and adequately protect the interests of the class." This requirement has usually been interpreted to require an analysis of whether there is any conflict in the interests of the representative plaintiffs and the interests of the other class members, whether the representative plaintiffs have a sufficient stake in the outcome of the suit to ensure vigorous prosecution and whether the representative plaintiffs' counsel possesses sufficient experience and ability to litigate the claims properly. *See* 7 A Wright & Miller, *Federal Practice and Procedure* §§ 1765–1769; 3B Moore *Federal Practice* ¶ 23.07.

█ Citing a number of franchise cases, the defendants principally attack the adequacy of the plaintiffs as class representatives by contending that the plaintiffs are "former" customers whose interests are antagonistic to those of "present" customers. Between ordinary buyers and sellers, however, there is not the symbiotic relationship which exists between franchisee and franchisor where the franchisee quite literally "depends upon the economic viability of the defendant." *Free World Foreign Cars, Inc. v. Alfa Romeo*, 55 F.R.D. 26, 29 (S.D.N.Y. 1972).

Otherwise, the plaintiffs clearly have a sufficient interest in the antitrust allegations to assure vigorous prosecution. Moreover, it has been this Court's experience that the adequacy of representation depends more on the quality of class counsel than on any other factor, and plaintiffs' attorneys in this matter have had extensive antitrust experience.

*Requirements of Fed.R.Civ.P. 23(b)(3)*

█ Having determined that this action satisfies the requirements of Fed.R.Civ.P. 23(a), the Court must also decide whether it satisfies the requirements of Rule 23(b)(3). In order to certify this action as a Rule 23(b)(3) class action, the Court must determine that common questions of law or fact predominate over questions affecting only individual class members and that a class action is superior to other available means for adjudicating the controversy. Among the factors to be considered are the interests of class members in individually controlling separate actions, the extent and nature of any litigation already commenced by individual members of the class, the desirability of concentrating the claims in this forum and the manageability of the action if it is maintained as a class action.

*Predominance of Common Questions*

Plaintiffs' claim in this case is that a *per se* violation of Section 1 of the Sherman Act may be demonstrated as to plaintiffs and all other class members by evidence that (1) the express language of the form agreements between class members and defendants compels the purchase of ConAgra feed as a condition of the extension of credit or loans to the class members; (2) defendants entered such agreements with an appreciable number of their customers at a time when the prices of ConAgra feeds were higher than the prices of competing feed manufacturers; and (3) a not insubstantial volume of interstate commerce in feed suitable for laying chickens was sold to persons subject to such agreements with defendants. Although the Court makes no final determination by this ruling as to the merits of plaintiffs' claims, it would appear that the plaintiffs' allegations, if proved, could at least support a jury verdict in their favor. *See Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 502–4, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969); *Northern Pacific Ry. v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 2 L.Ed.2d 545 (1957); *International Salt Co. v. United States*, 332

U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947); *Fortner Enterprises, Inc. v. United States Steel Corp.*, 523 F.2d 961, 966 (6th Cir. 1975), *cert. granted*, 424 U.S. 907, 96 S.Ct. 1100, 47 L.Ed.2d 311 (1976); *Aamco Automatic Transmissions, Inc. v. Tayloe*, 407 F.Supp. 430 (E.D.Pa.1976). Thus, the Court finds that common questions of law and fact with respect to defendants' liability predominate over any individual questions.

■ Insofar as defendants have contended that individual coercion outside the agreements must be proved in order to establish the violation (thus rendering the question of liability an individual, rather than a common question), the Court finds that the rule in this Circuit has been and apparently continues to be that no "coercion" need be shown if the agreement itself expressly contains a tying term. *See Warriner Hermetics, Inc. v. Copeland Refrigeration Corp.*, 463 F.2d 1002 (5th Cir. 1972); *Shell Oil Co. v. F. T. C.*, 360 F.2d 470 (5th Cir. 1966); *also Abercrombie v. Lum's, Inc.*, 345 F.Supp. 387, 390 (S.D.Fla.1972). Even the Second Circuit, whose prior opinions have been interpreted to impose an individual coercion standard, has recently clarified its position to the effect that such coercion need not invariably be shown. *See, Hill v. A–T–O, Inc.*, 535 F.2d 1349 (2d Cir. 1976).

■ Defendants have also argued that they have counterclaims against class members for unpaid balances due on the purchase of feeds. Although the Court entertains substantial doubt that such counterclaims may properly be raised in this proceeding, *cf. Ford Motor Co. v. Strickland*, 302 F.Supp. 154 (S.D.Ga.1969), any valid counterclaims may be disposed of in separate proceedings and their putative existence does not destroy the predominance of common questions in this litigation. *See Aamco Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440 (E.D.Pa.1975). As most recently reaffirmed in *In re Plywood Antitrust Litigation*, 1976–1 *Trade Cases* ¶ 60,805 (E.D.,La.), a predominance of common questions regarding liability justifies class action treatment, even though there may be individual questions with respect to recovery of damages.

*Superiority of Class Action*

The only alternative to class action treatment of the antitrust claims asserted in this proceeding appears to be holding 45 separate trials, in each of which the same evidence would be repeated with respect to liability issues. Such a multiplicity of suits with the resulting waste of judicial resources and potential for inconsistent determinations is precisely what Rule 23(b)(3) was intended to preclude. Taking as a whole the considerations with respect to whether or not a class action is superior, this action with its comparatively small class, all of whose members are located in reasonable geographic proximity and many of whom are in fact located in this district, is quite manageable and the desirability of resolving all such claims in one proceeding is readily apparent.

For the reasons hereinabove stated, plaintiffs' motion for class certification is hereby granted and this action shall henceforth proceed as a class action pursuant to Fed.R. Civ.P. 23(b)(3) on behalf of a class consisting of all commercial egg producers located in the territory serviced by the then Southern Division of ConAgra, Inc. who have signed agreements with either defendant conditioning loans or extensions of credit upon the purchasing of ConAgra feeds. The Court hereby directs plaintiffs to furnish by mail individual notice of this ruling and the pendency of this action as a class action to each of the members of the class in a form to be approved by the Court.

It is so ordered, this 26th day of July, 1976.