569 F.2d 636
 186 U.S.App.D.C. 397
 Mister RALPHO, Appellant,
v.
J. Raymond BELL, Chairman, Foreign Claims Settlement
Commission of the United States, et al.
Minniah MELONG et al., Appellants,
v.
MICRONESIAN CLAIMS COMMISSION, an Agency of the United States, et al.
 Nos. 75-2088 and 76-1201.
 United States Court of Appeals,
District of Columbia Circuit.
 Sept. 12, 1977.
 
 ON PETITION FOR REHEARING
 Before McGOWAN, ROBINSON and WILKEY, Circuit Judges.
 ORDER
 PER CURIAM.
 
 
 1
 On consideration of the petition of appellees for rehearing, and of the supplemental brief in support thereof, it is
 
 
 2
 ORDERED by the Court that the petition of appellees for rehearing is denied.
 
 
 3
 Opinion for the Court filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.
 
 SPOTTSWOOD W. ROBINSON, III, Circuit Judge:
 
 4
 We have examined assiduously the arguments advanced in the Commission's petition for rehearing and adhere fully to our decision in these cases. Because, however, of several facets of the Commission's position on rehearing, these additional comments are indicated.
 
 
 5
 * We would have thought it ever so clear that we did not hold, as the Commission insists, "that procedural due process issues may not be withdrawn from judicial review."[1] To dispel that misapprehension, we need but refer readers to the relevant portion of our Ralpho opinion.[2] To reiterate, the narrow conclusion we actually reached was simply that the finality provision of the Micronesian Claims Act[3] does not, when measured by the standards articulated by the Supreme Court in Johnson v. Robison,[4] extend so far as to preclude review of claims drawing sustenance from the Constitution.[5] We find in the petition for rehearing no cause to modify our view on that score.
 
 
 6
 Nor, unlike the Commission, do we think the canon of construction enunciated in Johnson comes into play only when an alleged constitutional violation impairs "extremely significant" personal interests however they may be defined and not when it visits less critical injury.[6] The concept underlying this interpretive rule is that Congress would not lightly place constitutional claims beyond the pale of judicial review.[7] That predicate is hardly divested of force simply because the resulting harm is of little consequence in the eyes of some.
 
 II
 
 7
 The Commission argues also that the Supreme Court's recent decisions in Morris v. Gressette[8] and Briscoe v. Bell[9] radically alter preexisting law controlling adjudications as to whether an agency's patent departure from statutory mandates is subject to judicial review. We do not agree. Morris and Briscoe both involved the amenability to review of determinations entrusted to the Attorney General by the Voting Rights Act of 1965.[10] In each case, the Court presumed that his actions were reviewable absent "clear and convincing evidence" that Congress contemplated otherwise.[11] Inquiring into that body's likely purposes,[12] the Court concluded that any review of the Attorney General's determinations would seriously hamper implementation of the legislative scheme.[13] The Court stressed, moreover, that a ban on review vel non would not foreclose independent judicial scrutiny of legal questions to which the Attorney General had addressed himself, albeit the form of proceeding would change.[14] Faced with this calculus, the Court construed the statute as a preclusion of review.
 
 
 8
 In the cases sub judice, we have assessed the import of the finality provision of the Micronesian Claims Act by the very same standard applied by the Supreme Court in Morris and Briscoe.[15] We have found that little legislative attention was directed to that provision[16] and that no legislative purpose would be impaired by limited judicial review.[17] Unlike Morris and Briscoe but like Leedom v. Kyne,[18] upon which we relied the situation here is such that if review is not available to appellants now, their substantive rights will go forever unredressed. No more at this moment than earlier are we able to discern in this context "clear and convincing" evidence[19] that Congress intended that the Commission might disregard plain statutory norms without accountability someday in court.
 
 III
 
 9
 The Commission also attributes "severe, adverse consequences" to our interpretation of the Micronesian Claims Act.[20] The problem to which it adverts stems from exhaustion of the fund established for satisfaction of Micronesian claims,[21] and that in turn resulted directly from administrative indisposition to await judicial resolution of the substantial and complex issues emerging in these cases. From the inception of Ralpho's suit on September 20, 1974, it had been known that the Commission's ex parte resort to a value study in setting the amount of his award was under severe attack. The onset of Melong's action on April 1, 1975, gave notice of his contention that statutory mandates respecting the elements of an appropriate award had not been observed. The gravity of the charges in both cases could hardly have failed to generate an acute awareness that the awards to these claimants might have to be adjusted.
 
 
 10
 By an order entered October 13, 1976, we called upon the parties to submit memoranda addressing a series of questions, some of which inquired specifically as to the status of the fund. Until November 17, 1976, when the Commission filed a post-argument memorandum in Ralpho, $4,887,736 of the fund available for payment of claims under the Act remained unspent.[22] As late as February 7, 1977, when we entered an order directing that Melong be submitted without oral argument, we had no information that the fund would not accommodate the contingencies posed by the two cases.[23] Only upon the filing of the petition for rehearing on April 27, following rendition of our decisions on March 29, did we learn that the Secretary of the Interior had at some undisclosed time disbursed the entire balance of the fund. We do not know what sort of liaison, if any, on the course of the litigation was maintained between the Commission and the Secretary. What we do know is that the responsibility for coordination was not ours.
 
 The petition for rehearing is
 
 11
 Denied.
 
 
 
 [1]
 Appellees' Petition for Rehearing and Suggestion for Rehearing En Banc (unpaginated insertion)
 
 
 [2]
 Ralpho v. Bell, 186 U.S.App.D.C. ---, 569 F.2d 607, text at notes 83-94 (1976)
 
 
 [3]
 50 U.S.C.App. § 2020 (Supp. II 1972)
 
 
 [4]
 415 U.S. 361, 373-374, 94 S.Ct. 1160, 1169, 39 L.Ed.2d 389, 402 (1974)
 
 
 [5]
 Ralpho v. Bell, supra note 2
 
 
 [6]
 Since the Attorney General's actions under 42 U.S.C. § 1973 et seq. (1970 & Supp. V 1975) were deemed unreviewable, Morris v. Gressette, 432 U.S. 491, 97 S.Ct. 2411, 53 L.Ed.2d 506 (1977); Briscoe v. Bell, 432 U.S. 404, 97 S.Ct. 2428, 53 L.Ed.2d 439 (1977), even though they implicated "the extremely significant interests represented by claims of racial discrimination," Appellee's Supplemental Brief in Support of Petition for Rehearing at 5, the Commission argues that the Commission's activities should be similarly unreviewable, involving as they do only ex gratia benefits. Id. The Commission concedes, as it must, that neither Morris nor Briscoe insulates constitutional violations from judicial redress, id., but it deems this difference "immaterial." Id. We think such a distinction is crucial. Cf. Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192, 202 (1977); Weinberger v. Salfi, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522, 537 (1975) (Johnson "was expressly based . . . on the fact that if (the preclusion provision) reached constitutional challenges . . ., then absolutely no judicial consideration of the issue would be available. . . . In the present case . . . the . . . Act itself provides jurisdiction for constitutional challenges . . . . Thus, the (provision) do(es) not preclude constitutional challenges," and so did not summon Johnson into operation)
 
 
 [7]
 See Weinberger v. Salfi, supra note 6, 422 U.S. at 762, 95 S.Ct. at 2465, 45 L.Ed.2d at 537. Cf. Johnson v. Robison, supra note 4, 415 U.S. at 366-367, 94 S.Ct. at 1165, 39 L.Ed.2d at 397-398
 
 
 [8]
 Supra note 6
 
 
 [9]
 Supra note 6
 
 
 [10]
 Morris concerned Section 5 of the Act, 42 U.S.C. § 1973c (Supp. V 1975), while Briscoe involved Section 4(b), 42 U.S.C. § 1973b(b) (1970 & Supp. V 1975)
 
 
 [11]
 Briscoe v. Bell, supra note 6, 432 U.S. at 412, 97 S.Ct. at 2433, 53 L.Ed.2d at 446; See Morris v. Gressette, supra note 6, 432 U.S. at 500-501, 97 S.Ct. at 2418-2419, 53 L.Ed.2d at 516. Compare Ralpho v. Bell, supra note 2, 186 U.S.App.D.C. at --- & n.125, 569 F.2d at 624 & n.125
 
 
 [12]
 Briscoe does not bear out the Commission's assertion that courts are disabled from looking past the literal terms of a preclusion provision to its legislative history. Far from it, the Court there minutely examined the statute's genesis to determine the breadth Congress intended to give the provision, as well as the policies advanced in favor of preclusion. 432 U.S. at 411, 97 S.Ct. at 2432, 53 L.Ed.2d at 444-445. Only then did it reach the conclusion that the intent of Congress was unmistakable. 432 U.S. at 412, 97 S.Ct. at 2433, 53 L.Ed.2d at 446
 
 
 [13]
 Morris v. Gressette, supra note 6, 432 U.S. at 504-505, 97 S.Ct. at 2420-2421, 53 L.Ed.2d at 518-520; Briscoe v. Bell, supra note 6, 432 U.S. at 411-412, 97 S.Ct. at 2432-2433, 53 L.Ed.2d at 444-445
 
 
 [14]
 Morris v. Gressette, supra note 6, 432 U.S. at 504-505, 97 S.Ct. at 2420-2421, 53 L.Ed.2d at 518-520; Briscoe v. Bell, supra note 6, 432 U.S. at 411, 97 S.Ct. at 2432, 53 L.Ed.2d at 445
 
 
 [15]
 Ralpho v. Bell, supra note 2, text at notes 102-125
 
 
 [16]
 Id. at notes 83-91 and accompanying text
 
 
 [17]
 We did note that Congress feared that the agency would artificially prolong itself at public expense, id. text at note 90, but we were not persuaded that this motive was sufficient to countervail Congress' primary goal: fair compensation of Micronesian claims. Id. text at note 92. As we put it, "(n)owhere have we encountered the slightest indication that justice was to be sacrificed on the alter of speed." Id. text at note 148
 
 
 [18]
 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). Cf. Briscoe v. Bell, supra note 6, 432 U.S. at 413 n.13, 97 S.Ct. at 2433 n.13, 53 L.Ed.2d at 446-447 n.13
 
 
 [19]
 See text supra at note 11
 
 
 [20]
 Appellees' Petition for Rehearing and Suggestion for Rehearing En Banc (unpaginated insertion)
 
 
 [21]
 See Ralpho v. Bell, supra note 2, text at notes 14-33
 
 
 [22]
 Appellees' Supplemental Memorandum at 3
 
 
 [23]
 We do not imply that had the situation been otherwise our adjudicative responsibility would have been any different, since "(i)t is clear that the want of physical power to enforce its judgments does not prevent a court from deciding an otherwise justiciable case." Nixon v. Sirica, 159 U.S.App.D.C. 58, 66, 487 F.2d 700, 708, 19 A.L.R.Fed. 343 (1973) (footnote omitted). Cf. Glidden v. Zdanok, 370 U.S. 530, 568-571, 82 S.Ct. 1459, 1482-1484, 8 L.Ed.2d 671, 697-699 (1962)