Minniah MELONG, et al., Appellants,

v.

MICRONESIAN CLAIMS COMMISSION, an agency of the United States, et al.

Mister RALPHO et al., Appellants

v.

J. Raymond BELL, Chairman, Foreign Claims Settlement Commission of the United States, et al.

Minniah MELONG et al.

v.

MICRONESIAN CLAIMS COMMISSION, an agency of the United States, et al., Appellants.

Mister RALPHO et al.

v.

J. Raymond BELL, Chairman, Foreign Claims Settlement Commission of the United States, et al., Appellants.

Nos. 79–1063—79–1066.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 9, 1980.

Decided Oct. 20, 1980.

Theodore R. Mitchell, Saipan, Mareona Islands, with whom Edward C. King, Leonard C. Meeker and James N. Barnes, Washington, D. C., were on the brief for appellants in Nos. 79–1063 and 79–1064 and cross–appellees in Nos. 79–1065 and 79–1066.

Bruno A. Ristau, Atty., Dept. of Justice, Washington, D. C., for appellees in Nos. 79–1063 and 79–1064 and cross–appellants in Nos. 79–1065 and 79–1066. Alice Daniel, Acting Asst. Atty. Gen., Carl S. Rauh, U. S. Atty. at the time the brief was filed, Washington, D. C., William Kanter and Robert S. Greenspan, Attys., Dept. of Justice, Washington, D. C., were on the brief for appellees in Nos. 79–1063 and 79–1064 and cross–appellants in Nos. 79–1065 and 79–1066. James G. Hergen, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for appellees in Nos. 79–1063 and 79–1064 and cross–appellants in Nos. 79–1065 and 79–1066.

Before WRIGHT, Chief Judge, and MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

EDWARDS, Circuit Judge:

These consolidated cases are before us for the second time. *See Ralpho v. Bell*, 569 F.2d 607 (D.C. Cir. 1977), *rehearing denied*, 569 F.2d 636 (D.C. Cir. 1977); *Melong v. Micronesian Claims Commission*, 569 F.2d 630 (D.C. Cir. 1977), *rehearing denied*, 569 F.2d 636 (D.C. Cir. 1977). In this appeal, two questions are presented. Plaintiffs appeal an order of the District Court denying class certification in each of these cases. The Government has filed a cross–appeal, seeking reconsideration of certain positions previously argued before this court and rejected in its earlier opinions.

## I.

The comprehensive opinions of Circuit Judge Robinson, in the decisions previously issued by this court, set forth clearly the facts and procedural history of these cases. *See Ralpho v. Bell*, 569 F.2d 607 (D.C. Cir. 1977), and *Melong v. Micronesian Claims Commission*, 569 F.2d 630 (D.C. Cir. 1977). Therefore, we give only a brief summary here.

In 1971, Congress passed the Micronesian Claims Act to provide compensation for losses incurred by inhabitants of the Pacific Islands of Micronesia during and immediately following World War II.[1] In the Act, Congress established the Micronesian Claims Commission to solicit and resolve claims. In these cases, plaintiffs challenge certain awards made by the Commission under the Act.

In *Ralpho v. Bell*, plaintiffs pursue individual claims and attempt to represent a class of claimants challenging the sufficiency of property settlements under the Act. The gravamen of the complaint in *Ralpho* is that the Commission deprived plaintiffs of due process of law in basing its determinations of property damage claims on a property evaluation study without affording plaintiffs the opportunity to examine and rebut the findings of that study. In *Melong v. Micronesian Claims Commission*, plaintiffs pursue individual claims and at-

---

1. Micronesian Claims Act of 1971, Pub.L.No. 92–39, 85 Stat. 92 (1971).

tempt to represent a class of claimants challenging the sufficiency of wrongful death payments under the Act. In essence, plaintiffs charge that the Commission improperly relied upon a fixed mortality table in computing wrongful death benefits, without considering other factors normally utilized in assessing compensatory damages under the laws of the Trust Territory of the Pacific Islands (Micronesia) and general tenets of international law.

The District Court initially dismissed these cases, holding that the Act precluded judicial review of Commission decisions and that the court therefore lacked jurisdiction to consider plaintiffs' claims. Since the actions were initially dismissed, no ruling was issued by the District Court with respect to plaintiffs' requests for class action certification.

In *Ralpho v. Bell,* 569 F.2d 607 (D.C. Cir. 1977), *rehearing denied,* 569 F.2d 636 (D.C. Cir. 1977), this court reversed the District Court finding that the Act precluded all judicial review of Commission action. 569 F.2d at 625–26. The court remanded the case for further proceedings; the court also expressed its view that the plaintiffs in *Ralpho* had been denied due process of law if the Commission had in fact relied upon the property evaluation study. *Id.* at 629.

In *Melong v. Micronesian Claims Commission,* 569 F.2d 630 (D.C. Cir. 1977), *rehearing denied,* 569 F.2d 636 (D.C. Cir. 1977), the court similarly reversed the District Court, and also held directly that the Commission had violated its statutory mandate and improperly computed wrongful death benefits.

569 F.2d at 631. The court in *Melong* thus ordered that the awards to the individual plaintiffs be vacated and redetermined in a manner consistent with Trust Territory and international law. *Id.* at 635.

Since the District Court had not considered the motions for class certification, this court expressed no opinion on the propriety of class treatment. The court thus viewed each case as involving only the named plaintiffs, and left the matter of class certification for consideration on remand. *See* 569 F.2d at 611 n.4; 569 F.2d at 631 n.1.

On remand, the District Court denied class certification in each case. In *Melong,* the District Court held that class certification was improper because "the prerequisites of Local Rule 1–13(b) and Rules 23(a), 23(b)(1) and 23(b)(2), F.R.Civ.P. have not been satisfied." App. 225.[2] In *Ralpho,* the District Court concluded that class certification should be denied because "the prerequisites of Rule 23(a) have not been satisfied." R. 42.[3] However, pursuant to the earlier decisions of this court remanding these cases, the District Court ordered the Commission to redetermine the claims of the individual plaintiffs in each case. App. 226; R. 43.

■ For the reasons presented below, we hold that the denial of class certification in these cases was proper.[4] We also refuse to reconsider the earlier opinions of this court and accordingly dismiss the Government's cross–appeal. The rulings of the District Court are therefore affirmed.[5]

**2.** "App." refers to the appendix submitted by the appellants.

**3.** "R." refers to the record of the proceedings before the District Court.

**4.** Since the District Court entered a final order requiring a redetermination of the claims of the individual plaintiffs, the denial of class certification is ripe for review.

**5.** Appellants have filed a motion requesting that this court take judicial notice of 172 pages of unauthenticated documentary material consisting primarily of minutes of meetings of the Micronesian Claims Commission and correspondence between the Foreign Claims Settlement Commission and the Micronesian Claims Commission. We deny appellants' motion. Judicial notice was never intended to permit such a widespread introduction of substantive evidence at the appellate level, particularly when there has been absolutely no showing of special prejudice or need. The documentary evidence submitted by appellants is not the type of material embraced by Rule 201(b)(2) of the Federal Rules of Evidence; that rule is designed to permit judicial recognition of material such as scientific data or historical fact that, although outside the common knowledge of the community, is nevertheless ascertainable with certainty without resort to cumbersome methods of proof.

## II.

Appellants in this case attempt to represent no less than all Micronesian claimants who now might seek a redetermination of their awards. As stated in their reply brief, appellants request that this court remand these cases to the District Court with instructions to "enter an order permitting these actions to be maintained on behalf of all those Micronesians whose claims were adjudicated by the Commission;" appellants also seek instructions that the District Court "enter judgment in favor of the plaintiff class and order the Commission to set aside the award of all claimants who elect to seek redetermination of their claims." Appellants' reply brief, p. 19. In addressing this request for class certification, it is necessary to backtrack and briefly highlight the manner in which claims were resolved under the Act.

Section 103 of the Act established a Micronesian Claims Commission, and directed that the Commission give extensive publicity to the provisions of the Act and assist all claimants in the preparation and filing of claims. Micronesian Claims Act of 1971, Pub.L.No. 92–39, § 103, 85 Stat. 92 (1971). Upon receiving a claim, the Commission was authorized to approve or deny it; any claimant whose claim was denied or approved only in part was entitled to a hearing before the Commission with respect to such claim. *Id.* § 104(a). At the hearing the Commission could affirm, modify, increase, or reduce any amount previously awarded. *Id.*

Upon the resolution of all claims, payment was to be made from a fixed fund established by Congress. The Act also provided, however:

No payment shall be made on an award of the Commission unless the claimant shall first execute a full release to the United States and Japan in respect to any alleged liability of the United States or Japan, or both, arising before the date of the securing of the various islands of Micronesia by the United States Armed Forces.

*Id.* § 104(d).

Appellants allege that there are in excess of 7,500 claimants in the classes that they here seek to certify. Appellants also admit, however, that as of February 2, 1978, there were only 311 claimants who had not executed the releases required by the Act. Appellants' reply brief, pp. 3–4. While the named plaintiffs are included within that small group of claimants who have not signed releases, the overwhelming majority of the proposed class members are not. The first question that we must resolve, therefore, is whether those proposed class members who have executed releases with the Government may be included within the plaintiffs' proposed classes.

This issue is not a novel one; it has been addressed often by courts in a variety of cases involving proposed class actions. In each instance, the court considering the question has concluded that proposed class members who have executed releases can not be represented by individuals who have not executed a release. We agree with this principle and, in the instant cases, hold that those claimants who have previously executed releases may not be included within appellants' proposed classes.

In *Greeley v. KLM Royal Dutch Airlines*, 85 F.R.D. 697 (S.D.N.Y.1980), the plaintiff sought to represent a class of airline passengers with whom defendant KLM Royal Dutch Airlines had settled, or offered to settle, claims for lost baggage on terms that allegedly did not accord with the requirements of the Warsaw Convention. The plaintiff himself had refused a settlement offer of $20 for lost property valued at $1650. The District Court refused to certify the class. The court first noted the significant difference that existed between plaintiff's individual claim and the class claims of those passengers who had accepted the defendant's settlement offer.[6]

---

6. As described by the court:

Greeley did not settle his dispute with KLM and thus did not rely on the airline's alleged misrepresentations about the efficacy of the tariff rules. Consequently, plaintiff need not prove fraud or misrepresentation to recover.

While the court recognized that the plaintiff's interests were not "antagonistic" to the interests of those class members who had settled their claims, the court concluded that plaintiff was not an adequate representative of the interests of those class members. As stated by the court:

> However, there is no assurance that Greeley will vigorously litigate those questions of fact and law which he need not address to prevail on his individual claim but which are essential to any recovery by the still–aggrieved KLM passengers who settled with the airline. Absent such assurance plaintiff cannot be considered an adequate class representative under Rule 23(a)(4).

85 F.R.D. at 700.

Alternatively, the court in *Greeley* held that plaintiff's claims were not typical of those of the class, as required by Rule 23(a)(3). The court stated:

> Having refused to settle, plaintiff has no personal reason to be concerned with the means by which KLM induced settlements from others and therefore has no real interest in proving those settlements were wrongfully obtained. Thus his interest is not coextensive with the interests of the class members who settled, and his claim is not typical of those of the class.

*Id.* at 701. Since the requirements of Rule 23(a) had not been satisfied, the motion for class certification was denied. In addition, since the plaintiff had neither introduced evidence nor argued that there was anyone other than himself in the purported class who had not settled with the defendant, the court did not consider whether certification of that portion of the class that did not settle with the airline would satisfy the numerosity requirement of Rule 23(a)(1) and thus be proper under Rule 23.

A similar resolution was reached in *Aamco Automatic Transmissions, Inc. v. Taylor*, 407 F.Supp. 430 (E.D.Pa.1976). In this antitrust action against defendant Aamco, the District Court initially certified a class of former Aamco franchisees. Some of those franchisees, however, had executed general releases in favor of the defendant. Upon motion of the defendant for summary judgment with respect to the class members who had executed releases, the court instead redefined the class to exclude those class members. As the court explained:

> The class as originally defined would have included those franchisees who executed general releases. On an individual basis, Aamco could have asserted the general releases as a complete defense, shifting the burden to plaintiff to establish the invalidity of such releases on an individual basis. Because these would be separate factual issues as to each franchisee who had executed a general release, class treatment as to such franchisees would seem inappropriate.

407 F.Supp. at 433.

The court in *Aamco* noted that, with respect to those class members who had signed releases, an award of summary judgment for the defendant may have been appropriate. Instead of taking that action, however, the court redefined the class and excluded those class members "so that franchisees who may have executed general releases will not be precluded, as individual franchisees, from bringing action and contesting the validity of the release." *Id.*

Finally, we note an identical outcome in *Ingenito v. Bermec Corporation*, 376 F.Supp. 1154 (S.D.N.Y.1974), a case involving alleged securities law violations. Once again the District Court denied class certification, in part because a significant number of the proposed class members had executed

---

Conversely, those members of the purported class who have settled with defendant will be required to avoid the finality of their settlements, presumably by establishing that the settlements were induced by KLM's alleged misstatements concerning its limited liability. Thus, to represent the interests of these class members adequately, plaintiff will have to make a persuasive showing that the aggrieved KLM passengers who settled with the airline should not be bound by the terms of their settlements. Yet to prevail on his individual claim, Greeley will not have to make this threshold showing.
85 F.R.D. at 700 (footnote omitted).

settlements and releases with the defendant. As stated by the court, "plaintiffs' attack on the settlements or releases executed by them would clearly present individual issues as to the circumstances surrounding the obtaining of the release." *Id.* at 1171. The court also noted:

> The fact that many members of a proposed class have settled their disputes has been recognized as a significant factor in determining whether a class action is the superior method for adjudicating the controversy.
> *Id.*[7]

The uniform holdings in these cases reflect established legal principles concerning the nature and effect of an executed release. As stated by this court in *Rexrode v. Vinson*, 404 F.2d 830, 831 (D.C. Cir. 1968), "[a] release, as a settlement instrument, is not contra to public policy and must be given effect according to its terms." It is well established that "claims covered by the release and not reserved, no matter how meritorious, cannot be judicially entertained *unless the release itself is found to be defective." Urbanizadora Santa Clara, S.A. v. United States*, 518 F.2d 574, 578, 207 Ct.Cl. 297 (1975) (emphasis supplied).

The execution of a release does not conclusively bar prosecution of the underlying claim. The release itself may be found to be defective and therefore void. The point made in the above class action cases, however, is simply that the existence of such releases adds new and significant issues to actions brought on the underlying claims.

When the purported class representative has not executed a release and need not establish that the release is defective in his individual case, serious questions are raised concerning the typicality of the class representative's claims and the adequacy of his representation of other class members.

### III.

We believe that these fears are well illustrated in this case. Out of an alleged 7,500 class members, at most 311 of those members have not executed the full release required by the statute. On the basis of the principles enunciated above, we hold that these class representatives, none of whom have signed releases, may not prosecute this action on behalf of over 7,000 claimants who have.

In their opening brief, appellants briefly attack the administration of the claims program by the Commission, and the manner in which the releases were obtained. *See* appellants' brief, pp. 30–31. At no point, however, have the appellants alleged any constitutional deprivation in the manner in which the releases were executed. Nor have appellants asserted that the releases were invalid by reason of fraud, duress, coercion or misrepresentation. There is simply a one–paragraph description of certain aspects of the claims program, a description that we note is not supported by references to any factual evidence in the record.[8] Indeed, we have uncovered absolutely no evidence that the releases were unlawfully obtained.

7. Although the case presents a very different fact pattern and does not involve releases, we also note the denial of class certification in *Phillips v. Klasen*, 502 F.2d 362 (D.C. Cir.), *cert. denied*, 419 U.S. 966, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974). In that case, plaintiffs attempted to represent a class of postal employees who had accepted an early retirement offer and bonus from the Postal Service, rather than risk involuntary separation from the department as a result of impending reductions in personnel. Plaintiffs claimed that the offer was coercive and improper, and should be voided for all class members who accepted the offer. Even though in *Phillips* the class representatives themselves had accepted the retirement offer, this court upheld a refusal to certify the class. The court noted that many members of the class may have been "affirmatively pleased to have the opportunity to resign with retirement benefits and a substantial bonus," and that there were thus divergent views among class members undermining the foundations of a class action. 502 F.2d at 366–67. We are faced with a similar problem here. As in *Phillips*, there is no evidence that the parties in these actions in fact represent the interests of the great majority of claimants who accepted the award offer and may be presumed to be satisfied with it.

8. The Government contests the suggestion that there were any irregularities in the administration of the claims program. *See* appellee's brief, pp. 16–17.

In their reply brief, appellants' position appears to change. Rather than argue that the releases are somehow legally defective, appellants assert that "[i]f the Micronesians who signed the releases are in any way precluded from membership in the class, it is not because they signed releases, but rather because they submitted their claims to the jurisdiction of the Commission, those claims were adjudicated, and the awards now constitute administrative res judicata." Appellants' reply brief, p. 8. Appellants conclude, "[t]he release itself functions merely as acknowledgement of receipt of payment of the award; what would be called satisfaction of the judgment debt in the judicial context." *Id.* at 9.

Once again, appellants have not presented sufficient evidence to substantiate their argument. It is clear that for those claimants who accepted the initial award of the Commission and signed a release without seeking their statutory right to a hearing, there never was an "adjudication" of their claims. For these claimants, the Commission made an offer of settlement that was accepted. Rather than seek further reexamination of their awards and risk a reduction in benefits, these claimants accepted the settlement offer and executed a release from further liability.[9] In these cases, the release clearly serves as more than a mere "acknowledgement of receipt of payment."

A more difficult question is presented with respect to those claimants who executed a release after receiving a hearing from the Commission. Presumably, appellants' argument here is that if an "adjudicatory" body determines that a claimant is *entitled* to a certain award, that award can not be made contingent upon the execution of a release from further liability. Appellants themselves concede, however, that the entire claims program was characterized by Congress as "ex gratia," in which no individual claimant was *entitled* to any award. Instead, the Commission made a settlement

offer in exchange for a release that barred the claimant from any other proceeding that he might pursue in support of his claim. Furthermore, as noted above, the Commission was *required* to execute releases under the Act. Finally, we note that appellants have supplied us with absolutely no information concerning the number of claimants who brought an appeal to the Commission and executed a release only after a hearing before that body.

Given the posture of these cases, we find it unnecessary to make any determination concerning the nature and legal effect of the releases executed by the vast majority of those persons who presented claims to the Commission. The problems cited above are mentioned merely to demonstrate the difficulties inherent in allowing the proposed class representatives to pursue these class claims. While we may be inclined to believe that those claimants who executed releases are barred from seeking a redetermination of their awards, we agree with the courts in *Greeley v. KLM Royal Dutch Airlines, supra,* and *Aamco Automatic Transmissions, Inc. v. Taylor, supra,* that it is better to simply rule that those claimants who executed releases may not be included within the proposed classes. If any arguments exist on their behalf, they must be presented by proper plaintiffs with the proper factual development.

### IV.

Having concluded that those claimants who executed releases must be excluded from the proposed classes, appellants' motions for class certification stand in a very different light. Neither in their briefs nor at oral argument have appellants argued that class certification of the remaining claimants is proper. Given this fact, we are compelled to affirm the denial by the District Court of plaintiffs' motions for class certification.

---

9. We note that this risk of a reduction in the amount of the award was real. As stated above, the Act expressly authorized the Commission to reduce at the hearing any amount previously awarded. Micronesian Claims Act of 1971, Pub.L.No. 92–39, § 104(a), 85 Stat. 92 (1971). Such a reduction in fact occurred in the case of named plaintiff Ralpho. *See* 569 F.2d at 614–15.

It is far from clear exactly how many claimants remain in the proposed classes once those claimants who executed releases are excluded. Although as many as 311 claimants did not execute releases, the Government contends in its brief that only nine of those claimants are arguably within the class in *Ralpho,* and 31 within the class in *Melong. See* appellee's brief, pp. 17–18. Neither in their reply brief nor at oral argument have appellants responded to these allegations.

As stated in *Rex v. Owens ex rel. State of Oklahoma,* 585 F.2d 432 (10th Cir. 1978), "[a] party seeking class action certification must demonstrate, under a strict burden of proof, that all of the requirements of 23(a) are clearly met." Appellants have completely failed to carry that burden with respect to the remaining potential class members. Appellants have neither requested nor presented arguments in support of class certification of those claimants who did not execute releases. Consequently, we affirm the District Court's refusals to certify a class.

### V.

The Government has filed a cross–appeal in this action from the orders of the District Court requiring the claims of the individual plaintiffs in each case to be reopened and redetermined by the Commission in a manner consistent with the earlier opinions of this court. The Government thus requests that this court reconsider its argument that the provisions of the Act operate to withdraw jurisdiction from the courts to review actions of the Commission.[10]

■ The Government recognizes that this court's prior ruling on this issue is "the law of the case," but argues that this court is free to reconsider the matter if it chooses to do so. While it is true that the doctrine of the law of the case "is not an inexorable

command that rigidly binds a court to its former decisions but rather is an expression of good sense and wise judicial practice," *Carpa v. Ward Foods, Inc.,* 567 F.2d 1316, 1320 (5th Cir. 1978), we believe that the doctrine is properly applied in this case.

■ This court has very recently considered the law of the case doctrine as it applies to reconsideration on appeal of matters resolved in an earlier appeal in the same case. As stated in *Laffey v. Northwest Airlines, Inc.,* 642 F.2d 578 (D.C. Cir. 1980):

> An appellate court also is normally bound by the law of the case it established on a prior appeal, and for a very sound reason. If justice is to be served, there must at some point be an end to litigation; on that account, the power to recall mandates should be exercised sparingly. To warrant divergence from the law of the case, a court must not only be convinced that its earlier decision was erroneous; it must also be satisfied that adherence to the law of the case will work a grave injustice.

642 F.2d at 578, 585 (footnotes omitted).[11] As developed in *White v. Murtha,* 377 F.2d at 428, 432 (5th Cir. 1967), the law of the case should be followed on a subsequent appeal in the appellate court, "unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice."

■ None of those factors is present in this case. This court has in fact already considered at length an earlier petition of the Government for a reconsideration of the original opinions of this court. *See denial of petition for rehearing,* 569 F.2d 636 (D.C. Cir. 1977). Since the time of the denial of that petition, absolutely nothing of sub-

---

10. The Government admits that, in part, it presents this matter on appeal in order to "preserve the question for possible Supreme Court review." Appellee's brief, p. 20.

11. *See also Kimball v. Callahan,* 590 F.2d 768, 771 (9th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979); *Terrell v. Household Goods Carriers' Bureau,* 494 F.2d 16, 19 (5th Cir.), *cert. dismissed,* 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974).

stance has happened to alter the positions of the parties. The Government does not point to any new evidence or any new authority. Indeed, the Government merely refers this court to its earlier briefs on appeal and petition for rehearing and *en banc* review. In such a case, we refuse to ignore the clearly established law of the case and readdress matters twice before considered. The conclusion of the court in *Laffey* is equally applicable here; "we perceive no exceptional circumstances which would justify overriding the strong policy of repose normally accorded past decisions." 642 F.2d at 585.

At oral argument, counsel for the Government sought guidance from this court in resolving practical problems that the Government faces in complying with the directive of this court and reopening the claims of the individual plaintiffs. This court has already considered these practical problems faced by the Government. *See* 569 F.2d at 639. We add here that if the Government has practical problems in complying with the earlier directive of this court, the Government is both able and obligated to petition Congress for appropriate authority to comply with this court's order.

Accordingly, we affirm in all respects the orders of the District Court at issue in this case.

*So ordered.*