Janice FOSTER, Individually and on Behalf of all other persons similarly situated, Plaintiffs-Appellants,

v.

CENTER TOWNSHIP OF LaPORTE COUNTY, et al., Defendants-Appellees.

No. 85–1560.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 23, 1985.

Decided Aug. 13, 1986.

Ivan Bodensteiner, Valparaiso University School of Law, Valparaiso, Ind., for plaintiffs-appellants.

Martin W. Kus, Newby, Lewis, Kaminski & Jones, LaPorte, Ind., for defendants-appellees.

Before CUDAHY, ESCHBACH and COFFEY, Circuit Judges.

ESCHBACH, Circuit Judge.

The plaintiff, Janice Foster, brought claims, on her behalf and on behalf of those similarly situated, challenging the poor-relief eligibility guidelines adopted in 1981 by the defendants, including *inter alia*, Center Township, its Trustee, Helen Salek, and LaPorte County, Indiana. These claims were based upon federal and state statutory provisions, and the Due Process Clause of the Fourteenth Amendment. The district court entered judgment against the plaintiff on all claims pursuant to Fed. R.Civ.P. 41(b). The plaintiff appeals only from the judgment on her state statutory challenge. The primary questions which we will decide in this appeal are whether the plaintiff had standing to challenge the poor-relief guidelines on state statutory grounds, and whether she was a proper class representative for this claim. For the reasons stated below, we hold that, because the plaintiff was eligible for poor-relief assistance under the challenged guidelines, she did not have standing to challenge the 1981 guidelines and that she was not then a proper class representative. We will, therefore, vacate the district court's judgment on this claim and remand with directions to dismiss.

## I

In early December of 1980, Janice Foster exhausted her supply of heating oil. She applied for emergency assistance with Helen Salek, Trustee for Center Township, LaPorte County, Indiana ("Center Township"), who was responsible for "overseeing the poor" within Center Township and for administering Indiana's poor-relief statute.[1] Foster had three children at the time

---

1. Ind.Code § 12-2-1-1 provides:

   The township trustees of the several townships of this state shall be ex officio the overseers of the poor within their respective townships, and shall perform all the duties with reference to the poor of their respective townships that may be prescribed by law. Every township trustee shall, in discharging the duties prescribed in this chapter, be designated an overseer of the poor.

   Ind.Code § 12-2-1-6 provides in pertinent part:

   (a) The overseer of the poor in each township shall have the oversight and care of all poor persons in his township so long as they remain in a charge, and shall see that they are properly relieved and taken care of in the manner required by law. He shall, in cases of necessity, promptly provide medical and surgical attendance for all of the poor in his township who are not provided for in public institutions; and shall also see that such medicines and/or medical supplies and/or special diets and/or nursing as are prescribed by the physician or surgeon in attendance upon the poor are properly furnished. However, the township trustee may not provide to an individual any medical assistance under the poor relief program, if the medical assistance can be provided under IC 12-5-6.

   (b) The township trustee may, in cases of necessity, authorize the payment from the township poor relief funds for water, gas and electric services, including the payment of delinquent bills for such services, when necessary to prevent their termination or to restore terminated service.

she applied for assistance, and was receiving $315.00 a month from the federal Aid to Families with Dependent Children ("AFDC") program, and a monthly food-stamp allotment of $163.00. Under the guidelines then in effect for Center Township, Foster could qualify for emergency aid only if her monthly income was less than $413.00.[2] Counting her monthly food-stamp allotment, however, Foster's total monthly income was $478.00. Because it was Center Township's practice to include an applicant's food-stamp allotment as a part of his total monthly income, Foster was denied aid.

Foster immediately appealed the denial of assistance to the LaPorte County Board of Commissioners ("Board")[3] on the ground that Center Township's practice of including food stamps as a part of an applicant's income for the purpose of determining eligibility was improper. A hearing was held before the Board on December 8,

1980. Foster alleged that Salek told the Board that, if food-stamp allotments were no longer counted as a part of an applicant's income, she (Salek) would lower the income eligibility ceilings by a corresponding amount. The Board, finding that Foster had received interim emergency aid from a religious organization, declined to act upon her appeal. The Board, did, however, request that Foster and Center Township attempt to resolve their dispute privately.

Upon advice of counsel that inclusion of an applicant's food-stamp allotment might violate the Food Stamp Act of 1964 ("Act"), codified as amended at 7 U.S.C. §§ 2011–29, Salek drafted new guidelines that were adopted by the Board on December 10, to become effective January 1, 1981.[4] These guidelines excluded an applicant's food-stamp allotment as part of her monthly income, but significantly lowered the income eligibility ceilings.[5]

....
(e) If a person has received assistance under subsection (b) the person shall, before the person receives further assistance under subsection (b), certify whether the person's income, resources, or household size has changed since the person filed the most recent application for poor relief assistance. If the person certifies that the income, resources, or household size has changed, the township trustee shall review the person's eligibility and may make any necessary adjustments in the level of assistance provided to the person.

**2.** The monthly income eligibility requirements in effect at the time Foster applied for emergency aid were the following in 1980:

| Household Size | Monthly Income |
|---|---|
| 1 | $235.00 |
| 2 | 297.00 |
| 3 | 357.00 |
| 4 | 413.00 |
| 5 | 466.00 |
| 6 | 510.00 |
| 7 | 564.00 |
| 8 | 601.00 |
| 9 | 653.00 |
| 10 | 704.00 |

**3.** Ind.Code § 12–2–1–18 provides in pertinent part:
(a) If an applicant for or recipient of township poor relief is not satisfied with the decision of the township trustee as overseer of the

poor, he may appeal to the board of county commissioners in the county in which the township is located.
....
(b) In hearing an appeal the board and its hearing officers shall be guided by uniform relief standards of eligibility and need established by or for the township trustee as overseer of the poor for the granting of poor relief in his township.

**4.** The 1981 poor-relief assistance guidelines provided:

| Persons in Household | Total Monthly Receipts |
|---|---|
| 1 | $220.00 |
| 2 | 245.00 |
| 3 | 304.00 |
| 4 | 354.00 |
| 5 | 424.00 |
| 6 | 484.00 |
| 7 | 544.00 |
| 8 | 604.00 |
| 9 | 664.00 |
| 10 | 724.00 |
| 11 | 784.00 |

**5.** The effect of the 1981 guidelines was to lower the income eligibility levels for households with seven or fewer persons, but to raise, to some degree, the levels for households with eight or more persons. Thus, for all but households with eight or more persons, the 1981 revisions made it more difficult to qualify for poor-relief assistance.

On December 31, 1980, Foster filed this action, on behalf of herself and all others similarly situated, against Salek, Center Township, the LaPorte County Board of Commissioners, and the individual county commissioners. Foster alleged that the defendants' practice of including food stamps as a part of an applicant's monthly income violated the Food Stamp Act [6] and the Due Process Clause of the Fourteenth Amendment. On September 13, 1982, Foster amended her complaint to add the additional claim that the revised income eligibility standards were not reasonably related to the actual cost of necessities, and hence, violated the Indiana poor relief statute. Foster requested declaratory and injunctive relief as to these three claims.

On January 9, 1981, the district court ordered the defendants to provide Foster with fuel assistance in the sum of $150.00, and requested additional briefing on the issue of class certification. On March 12, 1981, the district court granted Foster's motion for class certification, but denied her motion for preliminary injunction. We affirmed the court's order denying the preliminary injunction by an unpublished order. *Foster v. Center Township*, 673 F.2d 1334 (7th Cir.1981). A bench trial was held on January 8 and 9, 1985. The court granted the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 41(b) and, on February 7, 1985, entered judgment against Foster on all claims. Foster filed a motion to amend judgment, which the court considered under both Rules 59(e) and 60(b), and denied. This appeal followed.

## II

Foster appeals only from the district court's entry of judgment for defendants on her claim that the 1981 guidelines were not reasonably calculated to meet the needs of the poor, and hence, violated the Indiana poor-relief statute. After a review of the record in the instant appeal, we concluded that Foster was in fact eligible for poor-relief assistance under those guidelines, and ordered the parties to submit supplemental briefs on the issue whether Foster had standing to bring suit.[7] In her supplemental brief Foster did not dispute her eligibility for poor-relief assistance under the 1981 guidelines, but, nevertheless, argued that she had standing (at the time of filing her original complaint on December 31, 1980) to challenge both the denial of assistance to her under the 1980 guidelines and the subsequent revision of those guidelines.[8]

Article III of the Constitution limits the power of the federal judiciary to the resolution of "cases" and "controversies." *See, e.g., Diamond v. Charles*, —— U.S. ——, ——, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986); *Bender v. Williamsport Area*

---

**6.** Section 8 of the Food Stamp Act, codified as amended at 7 U.S.C. § 2017(b), provides:

> The value of the [food stamp] allotment provided any eligible household shall not be considered income or resources for any purpose under any Federal, State, or local laws, including, but not limited to, laws relating to taxation, welfare, and public assistance programs, and no participating State or political subdivision thereof shall decrease any assistance otherwise provided an individual or individuals because of the receipt of an allotment under this chapter.

**7.** Defendant Center Township is a municipal corporation and the defendant Board is a county agency. The bar the Eleventh Amendment might otherwise present to Foster's state statutory claim, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984) (Eleventh Amendment bars suit against state official on the basis of

state law), is, therefore, inapplicable. *See Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 363–64, 33 L.Ed. 766 (1890); *Gary A. v. New Trier High School District No. 203*, 796 F.2d 940, 944–47 (7th Cir.1986). The parties have pointed to nothing in the record, nor did our examination of it reveal anything, that would indicate that the funding for the poor-relief assistance program came from the state treasury. *See Gary A.*, at 945 n. 9.

**8.** Foster did not appeal from the judgment against her federal constitutional and statutory claims relating either to the 1980 or 1981 guidelines. Because these claims are not before us, we express no opinion whether she enjoyed standing to bring the claims or whether the claims are moot.

*School District,* — U.S. —, —, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982); *Flast v. Cohen,* 392 U.S. 83, 94–101, 88 S.Ct. 1942, 1949–53, 20 L.Ed.2d 947 (1968). In its constitutional dimension,[9] the issue of a party's standing is a component of the case-or-controversy analysis, and, hus, bears on the power of a court to entertain the party's complaint. *Valley Forge,* 454 U.S. at 471, 102 S.Ct. at 758; *Davis v. Passman,* 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979); *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 262 n. 8, 97 S.Ct. 555, 561 n. 8, 50 L.Ed.2d 450 (1977); *Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *People Organized for Welfare and Employment Rights v. Thompson,* 727 F.2d 167, 169 (7th Cir.1984). We are, of course, obligated to consider the issue of standing, like any other question of our Article III jurisdiction, whether the parties have raised it or not. *Bender,* — U.S. at —, 106 S.Ct. at 1331 ("[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower court.' ") (quoting *Mitchell v. Maurer,* 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934)); *see also Village of Arlington Heights,* 429 U.S. at 260–62, 97 S.Ct. at 561; *Regents of University of California v. Bakke,* 438 U.S. 265, 281 n. 14, 98 S.Ct. 2733, 2743 n. 14, 57 L.Ed.2d 750 (1978); *D'Amico v. Schweiker,* 698 F.2d 903, 905–06 (7th Cir.1983). If we discover that the lower court lacked jurisdiction, because the plaintiff did not have standing, then we have jurisdiction on appeal, not of the merits, but merely for the purpose of correcting the error of the lower court entertaining the suit. *United States v. Corrick,* 298 U.S. 435, 440, 56 S.Ct. 829, 831, 80 L.Ed. 1263 (1936). It is immaterial that both parties failed to notice the jurisdictional defect. *Bender,* — U.S. at —, 106 S.Ct. at 2334.

Analysis of standing under Article III focuses on the party bringing a claim, not on the claim itself. *See, e.g., Valley Forge,* 454 U.S. at 484, 102 S.Ct. at 765; *Warth,* 422 U.S. at 500, 95 S.Ct. at 2205. In *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758, the Supreme Court set forth the following three requirements as the "irreducible minimum" that must be present before a party may invoke the Article III power of a federal court: (1) the party "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct

---

**9.** The term "standing" encompasses a number of prudential considerations as well. For example, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. at 499, 95 S.Ct. at 2205; *see Gladstone Realtors,* 441 U.S. at 100, 99 S.Ct. at 1608; *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978); *Tileston v. Ullman,* 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943). Yet, this is not an inflexible requirement, and the Supreme Court has relaxed it at times. *See, e.g., Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (owner of bar, punished for selling alcohol to males under 18 years old, allowed to assert the rights of such males not to be discriminated against on the basis of their sex); *Griswold v. Connecticut,* 381 U.S. 479, 481, 85 S.Ct. 1678, 1679–80, 14 L.Ed.2d 510 (1965) (physician charged as an accessory to crime has standing to assert that the underlying offense was unconstitutional); *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953).

Furthermore, a court should refrain from adjudicating "abstract questions of wide public significance" that amount to "generalized grievances" more appropriately addressed to the representative branch. *Warth v. Seldin,* 422 U.S. at 499–500, 95 S.Ct. at 2205–06; *Gladstone Realtors,* 441 U.S. at 99–100, 99 S.Ct. at 1608. That is, the "injury" must be immediate and direct, *i.e.,* "personal"; it must "affect one's possessions or bodily integrity or freedom of action, however expansively defined, ... and not just one's opinions, aspirations, or ideology." *People Organized for Welfare and Employment Rights,* 727 F.2d at 171; *see also Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 225–26, 94 S.Ct. 2925, 2934–35, 41 L.Ed.2d 706 (1974); *D'Amico v. Schweiker,* 698 F.2d 903 (7th Cir. 1983).

of the defendant," (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979)); (2) the injury "fairly can be traced to the challenged action," (quoting *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976)); and (3) the injury "is likely to be redressed by a favorable decision," (quoting *Simon*, 426 U.S. at 41, 96 S.Ct. at 1925). *See also Allen v. Wright*, 468 U.S. 737, 766, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984); *Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984); *Watt v. Energy Action Educational Foundation*, 454 U.S. 151, 160, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981).

In her amended complaint, Foster alleged that "[t]he failure of the defendants to establish income eligibility standards for poor relief assistance which are reasonable [sic] related to the actual costs of necessities violates the Indiana Poor Relief Law, I.C. § 12–2–1–1 *et seq.*" Complaint ¶ 30. Foster argues that, because she is a food-stamp recipient entitled to the benefits of the Food Stamp Act, and because she was a welfare recipient whose income level could change, she "had a stake in securing the relief sought both in her original and amended complaints" sufficient to confer standing upon her to challenge the 1981 guidelines. We disagree.

■ The underlying constitutional analysis is not altered by the fact that Foster is seeking prospective relief, not damages. The case-or-controversy requirement of Article III applies with equal force to actions for declaratory judgments as it does to actions seeking traditional coercive relief. *See, e.g., Bender*, —— U.S. at ——, 106 S.Ct. at 1331–32; *Heckler v. Mathews*, 465 U.S. 728, 738–39, 104 S.Ct. 1387, 1394–95, 79 L.Ed.2d 646 (1984); *Lyons*, 461 U.S. at 111–13, 103 S.Ct. at 1670–71; *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969); *United Public Workers v. Mitchell*, 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947); *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 239, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937); *J.N.S., Inc. v. State of Indiana*, 712 F.2d 303 (7th Cir.1983). This does not mean that the type of relief requested does not affect the nature of the injury that a plaintiff must identify, for it does. In order to demonstrate standing for a declaratory judgment, Foster must show an "actual controversy," 28 U.S.C. § 2001, that is, that she has sustained, or is in immediate danger of sustaining, a direct injury as the result of the defendants' conduct in establishing the 1981 guidelines. The threat of injury must be real and immediate, not conjectural or hypothetical. *See, e.g., Bender*, —— U.S. at ——, 106 S.Ct. at 1332; *Lyons*, 461 U.S. at 103, 103 S.Ct. at 1665 (Plaintiff's assertion that he may again be subject to an illegal chokehold does not create the actual controversy that must exist for a declaratory judgment to be entered.); *Golden*, 394 U.S. at 109–110, 89 S.Ct. at 960; *United Public Workers*, 330 U.S. at 89–91, 67 S.Ct. at 564–65; *see also Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Foster's request for injunctive relief depends, in part, upon a showing of irreparable harm. *Lyons*, 461 U.S. at 111, 103 S.Ct. at 1670; *O'Shea*, 414 U.S. at 502, 94 S.Ct. at 679.

That Foster receives food stamps or that her income might someday exceed the eligibility guidelines is palpably inadequate to confer standing on her to challenge the 1981 guidelines. Foster's receipt of food stamps bears upon her claim that the defendants indirectly calculated the value of food stamps as a part of her income in revising the 1980 guidelines, a claim Foster chose not to pursue on appeal. The possibility that Foster's income might change, so that she might no longer qualify for assistance under the 1981 guidelines, is entirely conjectural (in fact, totally unsubstantiated in the instant case) and insufficient to constitute an injury-in-fact, threatened or actual, within the meaning of Article III. *See Valley Forge*, 454 U.S. at 471–72, 102 S.Ct. at 758; *Larson v. Valente*, 456 U.S. 228, 238–39, 102 S.Ct. 1673,

1680, 72 L.Ed.2d 33 (1982); *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372–74, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982) ("distinct and palpable" personal injury required to support standing). In addition, the fact that Foster was a welfare recipient lends no support to her argument that she has standing to challenge the very guidelines under which she is eligible for aid.[10] The receipt of welfare benefits, including food stamps, although it sets her apart from a large part of the general public in regard to her income level, does not, under the facts of this case, give her an interest in this litigation for the purposes of standing under Article III that is any different from that of a non-welfare recipient.[11] Finally, Foster challenges only the eligibility ceilings, not the amount of benefits an eligible applicant is entitled to receive. The simple fact is that she is eligible, and, therefore, has suffered no direct injury as a result of the manner in which the defendants have decided to establish those ceilings.

The insufficiency of Foster's "stake" in this litigation for the purpose of Article III standing is further illustrated by the fact that the relief she is seeking cannot be said to redress an injury to her. *See Larson,* 456 U.S. at 243 n. 15, 102 S.Ct. at 1682 n. 15. At best she can argue that a declaration that the poor-relief guidelines are not reasonably related to the actual cost of necessities would benefit her if her income were to increase and exceed the applicable eligibility ceiling. But, as we noted above, such a change is entirely speculative. Furthermore, even assuming that the present standards are not tailored to the actual costs of necessities, there is no reason to think that, following an increase in her income, Foster would qualify under such a standard.

Distilled to its constitutionally relevant premise, Foster's argument for standing rests on no more than a general interest in insisting that government officials comply with statutory or constitutional obligations. The type of injury necessary to confer

**10.** It is, of course, true that membership in an identifiable group may, under appropriate circumstances, suffice to confer standing. For example, living in a neighborhood may be sufficient to confer standing upon a party challenging proposed changes in that neighborhood. *See, e.g., Alschuler v. Department of HUD,* 686 F.2d 472, 476–77 (7th Cir.1982) (allegation that housing project would increase crime, decrease property values, and interfere with environmental and aesthetic values sufficient to confer standing); *South East Lake View Neighbors v. Department of HUD,* 685 F.2d 1027, 1034–35 (7th Cir.1982) (allegation that construction of high-rise apartment complex would increase traffic and parking congestion, cause noise and air pollution, and increase violent crime sufficient to constitute injury-in-fact); *see also Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). Furthermore, one may, in the context of a particular case, have standing to challenge acts or practices having a deleterious effect on the environment. *See, e.g., Sierra Club v. Morton,* 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). Likewise, an organization may have standing to challenge acts affecting it or its members. *See, e.g., International Union United Automobile, Aerospace & Agricultural Implement Workers of America v.*

*Brock,* —— U.S. ——, 106 S.Ct. 2523, 2527–31, 91 L.Ed.2d 228 (1986); *Valley Forge,* 454 U.S. 464, 476 n. 14, 102 S.Ct. 752, 761 n. 14; *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). Even in such cases, however, the plaintiff must nevertheless identify a perceptible, albeit perhaps "general," injury. *See, e.g., Andrus v. Sierra Club,* 442 U.S. 347, 353 n. 8, 99 S.Ct. 2335, 2338 n. 8, 60 L.Ed.2d 943 (1979); *Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. at 73–74; 98 S.Ct. at 2630; *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 45 n. 25, 96 S.Ct. 1917, 1927 n. 25, 48 L.Ed.2d 450 (1976); *SCRAP,* 412 U.S. at 689, 93 S.Ct. at 2405; *Montgomery Environmental Coalition v. Costle,* 646 F.2d 568, 576–78 (D.C.Cir.1980).

**11.** It would, of course, be a different matter if Foster were receiving the poor-relief aid for which she was eligible, and were complaining that the defendants had instituted new procedures that delayed the processing of those benefits, *see, e.g., Aiken v. Obledo,* 442 F.Supp. 628, 639–47 (D.C.Cal.1977); *cf. Rochester v. White,* 503 F.2d 263 (3d Cir.1974), or that the acts of others interfered with her use of those benefits, *see, e.g., Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); *cf. Heckler v. Mathews,* 465 U.S. 728, 738, 104 S.Ct. 1387, 1394, 79 L.Ed.2d 646 (1984).

standing, however, must be something "other than the psychological consequence presumably produced by observation of conduct with which one disagrees." *Valley Forge*, 454 U.S. at 485, 102 S.Ct. at 765; *see also Diamond*, —— U.S. at ——, 106 S.Ct. at 1706; *Allen*, 468 U.S. at 754–55, 104 S.Ct. at 3326–27; *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *American Civil Liberties Union v. City of Charles*, 794 F.2d 265, 268 (7th Cir.1986) ("To be made indignant by knowing that government is doing something of which one violently disapproves is not the kind of injury that can support a federal suit."). To confer standing on Foster on the basis of the interest she has in the present litigation means that any citizen in Center Township would have standing in such a case. *Allen*, 468 U.S. at 754–56, 104 S.Ct. at 3327. We do not doubt Foster's willingness to litigate or the fervor of her advocacy. We shall even assume, for the sake of argument, that Foster's representation would "assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Nevertheless, fervent advocacy is not a substitute for a direct personal injury. *Valley Forge*, 454 U.S. at 484–85, 102 S.Ct. at 765; *see also Allen*, 468 U.S. at 750–53, 104 S.Ct. at 3324–25; *Heckler*, 465 U.S. at 738, 104 S.Ct. at 1394; *Ogden v. United States*, 758 F.2d 1168, 1177–78 (7th Cir.1985).

■ We hold, therefore, that Foster lacked standing to challenge the 1981 poor-relief assistance guidelines. She has failed to demonstrate the existence of an "actual controversy," *i.e.*, immediate danger of sustaining a direct injury as a result of the defendants' conduct, needed for the district court to issue a declaratory judgment. *Lyons*, 461 U.S. at 103, 103 S.Ct. at 1665. By the same token, Foster has no standing to request an injunction. The required threshold showing of injury cannot be made where, because of the speculative nature of her claim, there is no real or immediate threat of Foster being harmed by the defendants' conduct. *Id.* at 111, 103 S.Ct. at 1670; *O'Shea*, 414 U.S. at 502, 94 S.Ct. at 679.

■ The only question remaining for our consideration is whether the fact that Foster, the only named plaintiff in the instant action, lacked standing to challenge the 1981 revised guidelines requires dismissal of her class claim as well. In her complaint, Foster sought declaratory and injunctive relief for herself and "all persons living in Center Township, LaPorte County, State of Indiana, who have been or will be similarly situated in that they are or will be otherwise eligible for poor relief as authorized by I.C. 12-2-1-1, *et seq.*, but who have been or will be denied such relief because of the value of food stamps is being [sic] counted as income for the purposes of determining eligibility for poor relief assistance, either directly or indirectly as a result of defendants' policy and practice of reducing Trustee eligibility standards to reflect the value of food stamps." Amended Complaint ¶ 14. Because she was eligible for poor-relief assistance under the 1981 guidelines, Foster is not a member of the class described in ¶ 14 of her amended complaint.

It is, of course, axiomatic that the named representative of a class must be a member of that class. *Bailey v. Patterson*, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962); *Melong v. Micronesian Claims Commission*, 643 F.2d 10 (D.C. Cir.1980); *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 522 F.2d 1235 (7th Cir.1975), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). Furthermore, it is clear that, if Foster lacked standing to bring the claim in question in her own right, she cannot qualify as a representative of a class purporting to raise the same claim. *See Bailey*, 369 U.S. at 32–33, 82 S.Ct. at 550–51. Hence, we hold that Foster's class claims must be dismissed.

Foster attempts to characterize the issue of her standing to bring her class claims as a question of mootness, not of standing.

In essence, Foster argues that she had standing at the time she filed her original complaint, and that her claims became moot with the district court's order of January 9, 1981, that the defendants provide her $150.00 for her fuel bill. Foster, citing *United States Parole Commission v. Geraghty*, 445 U.S. 388, 398 n. 6, 100 S.Ct. 1202, 1209 n. 6, 63 L.Ed.2d 479 (1980); *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 753–55, 96 S.Ct. 1251, 1258–59, 47 L.Ed.2d 444 (1976); *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), also asserts that the fact that her claims expired should not affect her ability to continue as a class representative. *See also Trotter v. Klincar*, 748 F.2d 1177 (7th Cir.1984).

These cases create an exception, in the context of class actions, to the general requirement that an actual "case" or "controversy" (within the meaning of Article III) exists, not only at the date the action is initiated, but at every stage of the trial and appellate proceedings, *see Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973); *Trotter*, 748 F.2d at 1183. Under that exception, the named plaintiff, whose individual claims have become moot, may continue to act as a class representative even though his claims cannot be characterized as "capable of repetition, yet evading review." In essence, the Supreme Court has entertained the fiction that, upon certification, the class obtains a legally cognizable interest independent of that of the named plaintiff, that relates back to the date of the original motion for certification. *Trotter*, 748 F.2d at 1183.

Ordinarily, the motion for class certification must be made prior to the expiration of the named plaintiff's claim, *see, e.g., Geraghty*, 445 U.S. at 398, 100 S.Ct. at 1209, although, if the claim is of such a transitory nature that the district court cannot reasonably be expected to *rule* on the motion for certification before the expiration of the named plaintiff's claim, the certification may be deemed to relate back to the filing of the original complaint. *See id.*, at 399, 100 S.Ct. at 1210; *Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975); *Sosna*, 419 U.S. at 402 n. 11, 95 S.Ct. at 559 n. 11.

In the instant case, however, Foster never had standing to challenge the 1981 guidelines. As the Supreme Court observed in *Warth*, 422 U.S. at 502, 95 S.Ct. at 2207 (quoting *O'Shea*, 414 U.S. at 494, 94 S.Ct. at 675):

> That a suit may be a class action, however, adds nothing to the question of standing, for even the named plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."

Because Foster never had standing to challenge the 1981 guidelines, the question of mootness of the class claims simply does not arise.

This result may seem harsh. Indeed, the parties have pursued this litigation for approximately six years. However, this was a matter that the parties could have easily avoided. It was apparent from the face of her complaint that Foster never had standing and that she never was a member of the class she was named to represent. This was not a case where the issue of standing could be said to blend into a resolution of the merits. Nor did standing turn upon the determination of complex factual or legal questions. There might have been a number of persons in Center Township who were denied poor-relief assistance under the 1980 guidelines due to the inclusion of their food-stamp allotments and who also might not qualify under the 1981 guidelines because their income, not including food stamps, exceeded the revised eligibility ceilings. The simple fact is that Foster was not one of them.

### III

For the reasons stated above, we VACATE the district court's judgment with respect to the plaintiff's state statutory claim, and REMAND with directions to DISMISS that claim.