Nancy C. VICKERS and Robert V. Vickers, d/b/a Tower Enterprises, Plaintiffs-Appellants,

v.

HENRY COUNTY SAVINGS & LOAN ASSOCIATION, Paul Prior and Donald E. McNeil, Defendants-Appellees.

No. 86–1527.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1986.

Decided Aug. 21, 1987.

Rehearing Denied Oct. 22, 1987.

John R. Carr III, Buschmann, Carr & Meyer, Indianapolis, Ind., for plaintiffs-appellants.

R. Scott Hayes, Scotten & Hinshaw, New Castle, Ind., for defendants-appellees.

Before COFFEY and FLAUM, Circuit Judges, and PARSONS, Senior District Judge.[*]

PARSONS, Senior District Judge.

Nancy Vickers and Robert V. Vickers appeal from the district court's order dismissing their four count complaint. We affirm.

Appellants Robert V. and Nancy Vickers, husband and wife, are partners in Tower Enterprises which manage the Tower Apartments. Appellees Paul Prior and Donald E. McNeil are president and vice president of appellee Henry County Savings & Loan Association (the Loan Association). Others not now before us but who were involved in the transactions underlying the present state of affairs are Robert R. and Naomi Vickers, the parents of appellant Robert V. Vickers, and James Tilberry, a law partner of Robert V. Vickers who, along with his wife Joanne, held for a short period of time an interest in the Tower Apartments.

On May 3, 1972, Robert R. and Naomi Vickers purchased the Tower Apartments, located in Anderson, Indiana, and borrowed $600,000 from the Loan Association to finance part of the purchase price. To secure the loan they executed a mortgage on the apartment property to the Loan Association. In 1975, they fell behind in their payments on the note and a default occurred. At the insistence of the Loan Association, Robert R. and Naomi Vickers agreed to restructure and refinance their debt, and on July 9, 1977, they executed a new note covering the remaining unpaid balance, which at that time was $520,000, accumulated interest, late penalties, and other charges—all of which totalled $619,-000. This new note was secured by the Tower Apartments real estate and also by other real estate they owned. On that same day, they transferred the Tower Apartments to their son, Robert V. Vickers, and his law partner, James Tilberry, who along with their spouses executed to the Loan Association an agreement in which they assumed the obligation owed by Robert R. and Naomi Vickers to the Loan Association. The Tower Apartments then were conveyed to a partnership called Tower Enterprises, of which appellants, Robert V. and Nancy Vickers, were the sole partners.

Sometime later, the question arose as to whether the appellants were personally liable under the July 9, 1977 assumption agreement. On November 14, 1984, they sent a letter to the Loan Association requesting it "to confirm the non-existence of [any] personal liability [on the part] of ... Robert V. Vickers ... in connection with the execution of the Assumption Agreement." The Loan Association responded by letter stating that "[t]o the extent that Mr. Vickers believes he is not personally liable, he is incorrect."

On April 8, 1985, the appellants filed their complaint. In its count I they sought a declaratory judgment that would state that they were not personally liable under the assumption agreement. In count II they requested an order directing an accounting from the Loan Association of all the charges that had been added to the

* Hon. James B. Parsons, Senior District Judge for the Northern District of Illinois, is sitting by designation.

principal owed on the original loan that Robert R. and Naomi Vickers had refinanced back in 1977. In count III they sought damages and requested that the court enjoin the Loan Association from holding them personally liable on the assumption agreement and that the court also equitably bar the Loan Association from foreclosing upon any of the real estate that had been mortgaged by Robert R. and Naomi Vickers to the Loan Association back in 1977 at the time when the two of them had refinanced the original debt. Finally, in count IV, they requested a declaratory judgment that would state that they were not personally liable under the assumption agreement for a part of the amount owed on the refinanced note.

The district court concluded as to counts I and IV that no justiciable case or controversy sufficient to permit relief under the Declaratory Judgment Act had been presented, and that even had a justiciable case or controversy been shown, it would decline to exercise its jurisdiction to declare the relative rights of the parties. It concluded that count II failed to state a claim upon which relief could be granted because the accounting the appellants requested was not one to be made to them by the Loan Association. And finally, it concluded that the allegations of count III were not actionable as a matter of Indiana law.

## I

■ We first address the district court's conclusion that counts I and IV did not present an Art. III controversy justiciable under the Declaratory Judgment Act. The Declaratory Judgment Act, so far as relevant, provides:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration....

28 U.S.C. § 2201 (Supp. III 1985). Art. III of the Constitution "limits the power of federal courts to deciding 'cases' or 'controversies.'" *Diamond v. Charles*, 476 U.S. 54, ——, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986). This requirement applies with the same force to actions for declaratory judgments as that with which it applies to actions seeking traditional coercive relief. *Foster v. Center Township*, 798 F.2d 237, 242 (7th Cir.1986). "The difference between an abstract question and a 'case or controversy' is one of degree ... and is not discernible by any precise test." *Babbit v. United Farm Workers National Union*, 442 U.S. 289, 297, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979). There has long been imprecision in the case-or-controversy requirement and of all "'the doctrines that cluster about Article III ... not only standing but mootness, ripeness, political question, and the like'" ... standing is the most important. *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (*quoting Vander Jagt v. O'Neill*, 699 F.2d 1166, 1178–79 (D.C.Cir.) (Bork, J., concurring), *cert. denied*, 464 U.S. 823, 104 S.Ct. 91, 78 L.Ed.2d 98 (1983)). The Supreme Court in a number of recent cases has sought to explicate this requirement and refine its application. And in so doing it has focused attention on the Doctrine of Art. III standing.

The Art. III requirement of standing, "perhaps the most important of the [Art. III] doctrines ... embraces several judicially self-imposed limits on the exercise of federal jurisdiction,"[1] but also "has a core component derived directly from the Constitution." *Allen v. Wright*, 468 U.S., at 750–51, 104 S.Ct., at 3324. This core component, "at an irreducible minimum," requires the party seeking to invoke the court's authority to (1) "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant"; (2) "that the injury fairly can be traced to the chal-

---

1. These judicially self-imposed limits include "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S., at 751, 104 S.Ct., at 3324.

lenged action"; and (3) that the injury "is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted); *see also Allen v. Wright,* 468 U.S., at 751, 104 S.Ct., at 3324.

■ In the context of cases in which, as here, declaratory relief is sought, the traditional test of justiciability has been whether " 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' " *Alcan Aluminum Limited v. Department of Revenue,* 724 F.2d 1294, 1298 (7th Cir.1984) (*quoting Maryland Casualty Co. v. Pacific Oil & Coal Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). As noted recently by this court in *Foster,* "In order to demonstrate standing for a declaratory judgment, [the plaintiffs] must show an 'actual controversy,' 28 U.S.C. sec. 2001, that is, that [they have] sustained, or [are] in immediate danger of sustaining, a direct injury as a result of the defendants' " putatively illegal conduct. *Foster,* 798 F.2d, at 242. Where, as here, the district court has concluded on the pleadings that the request does not present an Art. III case or controversy, in reviewing the matter we are to exercise our own sound judgment in determining whether or not that conclusion was correct. We do not merely defer to the discretion of the court below. *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1217 (7th Cir. 1980); *National Health Federation v. Weinberger,* 518 F.2d 711, 712 (7th Cir. 1975); *see also Goosby v. Osser,* 409 U.S. 512, 516, 93 S.Ct. 854, 857–58, 35 L.Ed.2d 36 (1973); *Lake Carriers' Ass'n v. MacMullen,* 406 U.S. 498, 506–08, 92 S.Ct. 1749, 1755–56, 32 L.Ed.2d 257 (1972).

■ Applying this standard to the allegations in counts I and IV of the complaint, we conclude without doubt that the district court's dismissal of them was correct. In count I the appellants alleged that representatives of the Loan Association (1) had told them that they would not assume any type of personal liability under the assumption agreement, (2) had not disclosed to them the Loan Association's "intended and actual meaning and use of the Assumption Agreement ...," and (3) had not disclosed to them other important information such as the nature and amount of the additional charges rolled into the financed note. The appellants claimed that according to the representations and nonrepresentations made to them by the Loan Association they "specifically understood that they were not assuming any type of personal liability by the execution and delivery of the Assumption Agreement to the Loan Association and that the Loan Association would look only to the real estate commonly known as the Tower Apartments as security." Then, in count IV they alleged that in 1984 the Loan Association had released to Robert R. and Naomi Vickers as collateral certain of the supplemental parcels of real estate which back in 1977 had been mortgaged by them, and that it had done this without notifying them, the appellants, and without there having been any express reservation of the right to release the collateral. In count IV the appellants went further to request that they be released from any personal liability to the extent to which it might be determined that their position had been impaired by the releases of these additional parcels of real estate. Obviously the appellants lacked standing for purposes of a declaratory judgment on these matters. Here again *Foster* requires them to have sustained or be in immediate danger of sustaining some injury. 798 F.2d, at 242. *See also Valley Forge,* 454 U.S., at 472, 102 S.Ct., at 758–59. In neither count I nor count IV do they allege or imply any actual or imminent injury whatsoever.

Any potential harm appellants may experience is entirely based on a hypothetical contingency: if they default on their loan, and if the Loan Association chooses to pursue them personally first rather than foreclose on the property it has secured, they would then have to defend on the issue they raise now. Apparently the parties disagree about the legal effect of the assumption agreement, but such disagreement by itself is insufficient to confer Art.

III standing. There must be some actual or imminent threatened harm before the matter is justiciable. Any potential harm here, based as it is on hypothetical contingencies, is not imminent, and the appellants are without Art. III standing. Counts I and IV were properly dismissed.

## II

■ The district court's dismissal of count II was proper under the circumstances also. Count II sought an accounting of the charges that were added to the obligation back in July of 1977 when the debt was that of the parents of appellant Robert V. Vickers. The district court concluded that the accounting sought was for the debt underlying the 1977 assumption agreement, and that this matter was between the Loan Association and the parents of appellant Robert V. Vickers. The district court concluded that count II failed to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

As in all Rule 12(b)(6) dismissals, we accept as true all well-pleaded factual allegations in the complaint and affirm the dismissal of count II only if it appears that the appellants could have proven no set of facts entitling them to relief. *Vaden v. Maywood*, 809 F.2d 361, 363 (7th Cir.1987).

"An action for an accounting is equitable in nature with the purpose of adjusting the account of the litigants and of rendering complete justice in a single action." *Anacomp, Inc. v. Wright*, 449 N.E.2d 610, 616 (Ind.Ct.App.1983); *see also Indiana ex rel. Neese v. Montgomery Circuit Court*, 272 Ind. 495, 399 N.E.2d 375, 377 (1980); *Atwood v. Prairie Village, Inc.*, 401 N.E.2d 97, 99 (Ind.Ct.App.1980). The appellants have not cited and we have not found any Indiana authority that permits a party to seek an accounting for an obligation owed by a third party. Indeed their request for such an accounting cannot state a claim upon which relief can be granted, for in the absence of such a third party the court would lack personal jurisdiction over the "real party in interest." Fed.R.Civ.P. 17(a). The district court correctly dismissed count II of the appellants' complaint.

## III

■ Count III of the complaint also was dismissed for failure to state a claim upon which relief can be granted. In this count appellants sought damages, actual and punitive, on the ground that they had been fraudulently induced into signing the assumption agreement. They charged that the Loan Association had concealed from them information it had a duty to disclose, and that further it had made false and misleading statements to them concerning the nature and extent of their personal liability. The district court properly concluded that these allegations of misrepresentations and omissions by the defendants could not be construed as anything other than representations concerning the "legal effect of an instrument," inactionable under Indiana law. *See Plymale v. Upright*, 419 N.E.2d 756, 763–64 (Ind.Ct.App.1981).

The appellants insist that the district court's conclusion concerning fraudulent inducement was incorrect, and that the Loan Association's representations of fact were material, false, made with knowledge or reckless ignorance of their falsity, and caused reliance to the detriment of the appellants. *See First National Bank of New Castle v. Acra*, 462 N.E.2d 1345, 1348 (Ind.Ct.App.1984); *see also South v. Colip*, 437 N.E.2d 494, 498 (Ind.Ct.App.1982). However, under Indiana law certain representations are inactionable as a matter of law. Among these are "representations as to the legal effect of an instrument." *Plymale*, 419 N.E.2d, at 763–64. The misrepresentations appellants claim were made to them fall precisely within this category of inactionable representations. Count III does not state a claim of fraudulent inducement actionable under Indiana law.

Appellants also insist that count III is actionable in that it states a claim for relief under the doctrine of "promissory estoppel." They argue that the Loan Association defendants "represented, *i.e.* promised, that neither of them would assume any type of personal liability" by signing the

assumption agreement. By this appellants imply that the Loan Association's representation to them was a promise—a promise that if they signed the assumption agreement the Association would not later attempt to hold them personally liable under it. Although the Loan Association concedes that this may have been a promise, a matter we need not decide, it correctly observes that, absent any effort by it to hold the appellants personally liable, there is as yet no injustice to be avoided by an order of the court acting under the doctrine of "promissory estoppel."

We note in addition that Indiana applies this doctrine only as a substitute for the element of consideration in a contract where detrimental reliance has been shown. *See generally Security Bank & Trust Co. v. Bogard,* 494 N.E.2d 965, 968–69 (Ind.Ct.App.1986); *Citizens State Bank v. People's Bank,* 475 N.E.2d 324, 327–28 (Ind.Ct.App.1985); *Tipton County Farm Bureau Cooperative Ass'n, Inc. v. Hoover,* 475 N.E.2d 38, 41–42 (Ind.Ct.App.1985); *Larrabee v. Booth,* 463 N.E.2d 487, 490–91 (Ind.Ct.App.1984); *Eby v. York-Division, Borg-Warner,* 455 N.E.2d 623, 627 (Ind.Ct.App.1983); *Pepsi-Cola General Bottlers, Inc. v. Woods,* 440 N.E.2d 696, 698–99 (Ind.Ct.App.1982); *Lyon Metal Products, Inc. v. Hagerman Construction Corp.,* 181 Ind.App. 336, 391 N.E.2d 1152, 1154–56 (1979). Indiana has not yet applied this doctrine as a device to abrogate a written agreement made subsequent to the promise, which is precisely the result the appellants seek. *See* J. Calamari & J. Perillo, *Contracts* sec. 6–8 (1977). In addition, as in the case of fraud, reliance on a promise must be reasonable. *Citizens State Bank,* 475 N.E.2d, at 327. Such is not the case here. A "promise" about the legal effect of an instrument is no different from a "representation" about its effect. We conclude that a claim for relief on the allegations of count III cannot under Indiana law be predicated upon the doctrine of promissory estoppel any more than it can be predicated on the doctrine of fraudulent inducement.

Finally the appellants claim that their allegations in count III state a claim for relief on the theory of negligent misrepresentation. That tort, as defined in Restatement (Second) of Torts sec. 552 (1977), has yet to find solid acceptance in Indiana. It first was noted, with the court declining to adopt it, in *English Coal Co. v. Durcholz,* 422 N.E.2d 302, 310 (Ind.Ct.App. 1981). *Accord Wilson v. Palmer,* 452 N.E.2d 426, 429 (Ind.Ct.App.1983). In *Essex v. Ryan,* 446 N.E.2d 368 (Ind.Ct.App. 1983), the court adopted the tort insofar as it applies to professionals whose actual callings require the giving of opinions and who fail to discharge skillfully their obligations to do so. *Id.,* at 370–71. The court, however, generally limited recovery under this tort only to those in privity with such a professional or to those of whom the professional had actual knowledge would be effected. *Id.,* at 373. Then, in *Eby,* the tort was recognized in the context of a claim that an employer through its agents breached a duty to a potential employee by making false representations upon which detrimental reliance was placed. 455 N.E.2d, at 629. Yet, the most recent pronouncement suggests that "negligent misrepresentation may not be a recognized theory of recovery...." *United Leaseshares, Inc. v. Citizens Bank & Trust Co.,* 470 N.E.2d 1383, 1390 (Ind.Ct.App.1984).

It is against this background that appellants request us to conclude that the allegations in count III state a claim for relief based on the tort of negligent misrepresentation. Their allegations, however, do not fit within the reach of either *Eby* or *Essex.* And even assuming that Indiana courts are prepared to expand the application of this tort beyond the realm of these two cases, the appellants' argument fails for another and conclusive reason. In order to recover under this tort, as in fraud and promissory estoppel, there must be action in justified reliance upon the alleged misrepresentation. *Eby,* 455 N.E.2d, at 628 (*quoting* Restatement (Second) of Torts, *supra* sec. 552). For the compelling reasons stated above regarding fraudulent inducement, this claim also must fail.

AFFIRMED.