In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-2617

STEVEN L. KARRAKER, MICHAEL A. KARRAKER,
and CHRISTOPHER M. KARRAKER,

*Plaintiffs-Appellants,*

*v.*

RENT-A-CENTER, INC., J. ERNEST TALLEY, and
ASSOCIATED PERSONNEL TECHNICIANS,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 02 C 2026—**Michael P. McCuskey,** *Chief Judge.*

ARGUED MARCH 29, 2007—DECIDED JULY 9, 2007

Before FLAUM, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* Today we consider whether the plaintiffs in this class action are prevailing parties entitled to attorney fees on their claim under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101. We previously considered the merits of the dispute in *Karraker v. Rent-A-Center*, 411 F.3d 831 (7th Cir. 2005).

The case involved RAC's use of the APT Management Test, which included the Minnesota Multiphasic Personality Inventory, in making promotions. The company would

not consider any employee for promotion in even the lowest level jobs unless the employee had 12 or fewer deviations on the test. The plaintiffs, who were certified as a class of all past and present employees of RAC in Illinois who took the test, contended that the MMPI was a medical test as defined by the ADA. The district judge granted RAC's motion for summary judgment, dismissing the case. We reversed in part and ordered judgment for the plaintiffs on the ADA claim.

Following remand, the district judge entered an order which stated in part:

> (2) Defendant RAC is ordered to make a diligent search of its Illinois stores, offices of district and regional managers with authority over stores in Illinois, corporate headquarters and storage facilities to find the results of the Management Test scores of Illinois RAC employees and narratives and any copies thereof and remove the Management Test scores and narratives for its Illinois employees from its Illinois stores, from its district and regional managers' offices, from corporate headquarters and from storage.

> (3) RAC is ordered to destroy the Management Test results and not consider the scores or narratives in making any employment decision for its Illinois employees. However, Plaintiffs have ten days from the entry of this order to object to the destruction of documents if Plaintiffs feel they need access to these documents for the present litigation. RAC should not destroy any test results prior to ten days from entry of this order.

The parties filed a joint proposal for storage of the APT Test results pending the final resolution of the case.

Plaintiffs then moved for attorney fees and costs in the amount of $267,023.75. The court denied the petition but

awarded the lead plaintiff, Steven Karraker, $5,000 as a fee for being a class representative. Plaintiffs appeal from the denial of attorney fees.

The issue is whether the plaintiffs are prevailing parties and thus entitled to attorney fees under the ADA, 42 U.S.C. § 12205. In finding that they were not prevailing parties, the district court relied primarily on *Barnes v. Broward County Sheriff's Office*, 190 F.3d 1274 (11th Cir. 1999), which in turn relies on *Farrar v. Hobby*, 506 U.S. 103 (1992).

In *Farrar,* the Court determined that a plaintiff who sued for $17 million and won $1 in nominal damages could be considered a prevailing party under 42 U.S.C. § 1988. To be a prevailing party, a plaintiff

> must obtain at least some relief on the merits of his claim. The plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought or comparable relief through a consent decree or settlement. Whatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement. Otherwise the judgment or settlement cannot be said to "affec[t] the behavior of the defendant toward the plaintiff." Only under these circumstances can civil rights litigation effect "the material alteration of the legal relationship of the parties" and thereby transform the plaintiff into a prevailing party. In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.

At 111-112 (internal citations omitted).

RAC argues that plaintiffs are not prevailing parties because they recovered no monetary (nor even nominal)

damages. Although the plaintiffs obtained injunctive relief, RAC says they failed to show that they would receive any tangible benefit from that relief. The company claims RAC stopped administering the APT test in 2000, before this suit was filed—a claim plaintiffs dispute. Further, RAC says, no named plaintiff remains employed by RAC, and plaintiffs have not identified a single class member who might benefit from the new promotion procedures. In addition, the argument is that the requirement that APT test results be destroyed to prevent improper disclosure in the future did not benefit the plaintiffs because there is no evidence that RAC ever disclosed the test results or ever intended to do so.

It is a close question, but we are convinced that the value of the destruction of the test results is at least as great as the $1 in nominal damages which made the plaintiff in *Farrar* a prevailing party.[1] In her concurrence in *Farrar*, Justice O'Connor set out factors which should be considered in determining prevailing party status: the extent of relief granted, the significance of the legal issue on which the plaintiff claims to have prevailed, and the public purpose served. Destruction of the results of improperly administered tests is a valuable benefit. It is no answer to say that RAC has not disclosed the results. Without the injunction, there would be nothing to prevent the company from either disclosing the results in the future or allowing their dissemination through negligence. The test results were not under lock and key in one safe location. Declarations in the record show that test results for 108 people were found in various stores

---

[1] We do not consider the other aspect of the injunction forbidding use of the test. That aspect is rendered unnecessary by the destruction of the records. RAC cannot use what it does not have so plaintiffs gained nothing additional by the prohibition on the use of the test results.

throughout Illinois. Also, judging by the publications in which our decision on the merits has been cited, the case has had a significant impact not just on the law, but on human resources departments throughout the country.

The plaintiffs also rely on the $5,000 incentive fee granted to Steven Karraker. That fee was clearly a benefit to him and it altered the relationship between him and RAC, thus meeting the requirements of *Farrar*. RAC, though, baldly states that "every court that has considered the precise nature of these incentive payments has held that they are **not** a component of a plaintiff's damages recovery on the merits, and instead are akin to reimbursable litigation expenses—such as expert fees and long-distance charges." Interestingly, rather than providing citations for this sweeping proposition in the text, citations are relegated to a footnote. And it is no wonder.

First, RAC cites *Matter of Continental Illinois Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992), saying it says "class representative incentive payments are 'non-legal but essential case-specific expenses, such as long-distance phone calls . . . .'" That case was a common-fund case under the federal securities laws, and the issue before us was whether a plaintiff in such a case is ever entitled to a fee. We reasoned that in some class actions, such compensation is necessary to induce a plaintiff to assume the risk of being a named plaintiff and that the fee "*could be thought* the equivalent of the lawyers' nonlegal but essential case-specific expenses, such as long distance phone calls, which are reimbursable." (Emphasis added.) RAC's interpretation incorrectly takes the statement out of conjecture and into certainty. Furthermore, in that case we were considering only whether the plaintiff was entitled to a fee, not whether, if one were awarded, it would make him a prevailing party.

The next case RAC cites is *Tiffany v. Hometown Buffet, Inc.*, 2005 WL 991982 (N.D. Cal. 2005), a district court

case, which RAC says stands for the proposition that a "class representative incentive payment is analogous to litigation costs, and should be excluded from calculation of plaintiff's potential damages recovery." That court was also not considering prevailing party status but rather whether an as yet unawarded fee could be used to calculate the jurisdictional amount in controversy so that the case could be removed to federal court under diversity jurisdiction. To be fair to RAC, we note that in disallowing the fee in the calculation, the court cited *Continental Illinois* for the proposition that fee payments were analogous to costs. But, as we said, the case has nothing to do with prevailing party status.

Finally, RAC cites *In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio 1997), for the proposition that "incentive compensation to class representative is litigation expense, similar to expert fee." That is, in fact, what the case says. What RAC does not tell us, though, is that the Court of Appeals for the Sixth Circuit reversed, saying in an unpublished order, "[i]ncentive awards, moreover, do not fit comfortably within the commonly accepted meaning of 'expenses.'" *In Re Southern Ohio Correctional Facility*, 2001 WL 1667267 (6th Cir. 2001). Apparently, not "every court that has considered" the issue agrees with RAC.

We need not decide how exactly Karraker's incentive payment should be characterized because we conclude that the injunction confers prevailing party status on him. But we note that Karraker's payment is unlike many incentive fees which are given to a named plaintiff out of a settlement fund, thus giving the named plaintiff a bit more money than other members of the class without having any effect on the defendant. Here, there is no settlement fund, and the $5,000 is a direct payment from RAC to Karraker and therefore could easily be said to alter the relationship between him and RAC.

We conclude that Karraker is a prevailing party. That conclusion, however, does not end this dispute. *Farrar* also makes clear that prevailing party status does not automatically make the plaintiffs eligible for all the fees they request. In this case, there has been no consideration of the reasonableness of the fee request. That is an issue for the district court to determine on remand.

Accordingly, the order denying fees is VACATED and the case REMANDED for a determination of a reasonable award of attorney fees.

FLAUM, *Circuit Judge*, dissenting. As the majority states, the question in this case is whether the plaintiffs are prevailing parties. To make that assessment, we must determine whether Karraker, or any other member of the plaintiff class, obtained "some relief on the merits of his claim" that "directly benefit[ted] him at the time of judgment or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). The majority does not specifically identify any benefit that the plaintiffs received and simply concludes that "[d]estruction of the results of improperly administered tests is a valuable benefit." *See supra* p. 4. However, the mere existence of the test results caused the plaintiffs no injury. To be entitled to an injunction, the plaintiffs had to establish that they sustained, or were immediately in danger of sustaining, some direct injury as a result of the challenged conduct. *Foster v. Center Tp. of LaPorte County*, 798 F.2d 237, 244 (7th Cir. 1986). The plaintiffs' claims that RAC might have disclosed the results in the future or allowed their dissemination through negligence did not confer standing because "the

injury or threat of injury must be real and immediate, not conjectural or hypothetical." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1993). The power to grant injunctive relief is not exercised to allay mere apprehension of injury at some indefinite future time. Accordingly, I believe that the first part of the district court's injunction was improperly entered.

As for the second part of the injunction, which ordered RAC not to consider the APT test scores when making employment decisions, the district court found that "there [wa]s no indication in the record . . . that [the test scores] were used any longer in promotion decisions by RAC." If the district court's factual finding was correct, then it did not have jurisdiction to enjoin RAC from considering the scores when making employment decisions, because the issue was moot. However, the record reflects that the district court's factual finding was incorrect because, as RAC acknowledged, it issued a memorandum on August 14, 2000 which stated that it would still use passing APT test scores in promotion decisions. As a result, there may have been a plaintiff who had standing to challenge RAC's continued use of the APT test scores if he or she 1) failed the APT test, 2) did not pass the Future Choice Selection Process and did not complete any required Developmental Competencies, and 3) was still employed at RAC on the date that the district court issued the injunction. Consequently, I would remand the case to the district court with instructions to determine whether the class included such a plaintiff on the date the injunction issued. For these reasons, I respectfully dissent from the majority's decision.

No. 06-2617 9

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*